UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 AUG 16  PM 3:36

CLERK

BY _____
DEPUTY CLERK

PHILADELPHIA INDEMNITY          )
INSURANCE COMPANY,              )
                               )
        Plaintiff,             )
                               )
        v.                     )     Case No. 2:23-cv-00641
                               )
LIFE SAFETY FIRE PROTECTION, INC.;  )
HAMPSHIRE FIRE PROTECTION CO., LLC; )
PC CONSTRUCTION, LLC; and SOUTHERN  )
VERMONT SPRINKLER SERVICES, INC.,   )
                               )
        Defendants.            )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT PC CONSTRUCTION, LLC'S MOTION TO DISMISS**
(Doc. 18)

Plaintiff Philadelphia Indemnity Insurance Company brings this action against
Defendants Life Safety Fire Protection, Inc. ("Life Safety"), Hampshire Fire Protection
Co., LLC ("Hampshire"), PC Construction, LLC ("PC Construction"), and Southern
Vermont Sprinkler Services, Inc. ("SVSS"), arising out of multiple water losses that
occurred at Founders Lodge, 5 Village Lodge Road, Stratton, Vermont 05155 (the
"Subject Property") in late 2021 and early 2022 as a result of allegedly defective design,
construction, maintenance, and/or repairs of a sprinkler system. Against PC Construction,
Plaintiff brings claims of negligence (Count V) and breach of warranty (Count VI).

On January 29, 2024, PC Construction moved to dismiss Plaintiff's Complaint for
failure to state a claim. (Doc. 18.) Plaintiff filed an Amended Complaint on February 20,
2024, (Doc. 20), and opposed the motion to dismiss on February 27, 2024, (Doc. 21). PC
Construction replied on March 5, 2024, (Doc. 22), at which point the court took the
pending motion under advisement.

Plaintiff is represented by Jason E. Cohn, Esq., Jeffrey M. Zielinski, Esq., and Thaddeus S. Kirk, Esq. PC Construction is represented by Pietro J. Lynn, Esq.

## I.   Factual Allegations in the Amended Complaint.

"[W]hen a plaintiff properly amends [his or] her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020) (per curiam). Because the Amended Complaint does not address the arguments made in PC Construction's motion to dismiss and only clarifies the identity of certain actors, the court evaluates the motion based on the Amended Complaint.

Plaintiff, a Pennsylvania corporation, provided property insurance to Stratton Condominium Association and/or Founders Lodge Condominium Association, Inc. (collectively, "Subrogor"). At all relevant times, the property insurance policy (the "Policy") was in effect and covered the Subject Property. At some point prior to November 30, 2021, each defendant was involved with some aspect of the construction and maintenance of a building at the Subject Property: Hampshire designed and installed a "dry fire protection system[,]" (Doc. 20 at 3, ¶ 15); PC Construction served as the general contractor for the construction; SVSS renovated the "fire suppression system[,]" *id.* at ¶ 17; and Life Safety inspected, maintained, and repaired the "fire sprinkler system[.]" *Id.* at ¶ 18.

On or about November 30, 2021, Life Safety responded to a complaint of a "burst sprinkler" at the Subject Property, repaired the "fire sprinkler system," and reinstalled it. *Id.* at 4, ¶ 19. Plaintiff alleges that "as a result of Defendants' improper design, construction, maintenance, and/or repair of the subject fire suppression system, an elbow union containing undrained water froze and burst, causing substantial water damage[]" on or about December 26, 2021. *Id.* at ¶ 20. Thereafter, having claimed to have repaired the elbow union, Life Safety drained the "fire suppression system" and put the "dry sprinkler system" back in place. *Id.* at ¶ 21. On or about January 15, 2022, however, a drain valve allegedly froze and burst, causing substantial water damage to the Subject Property "as a

2

result of Defendants' improper design, construction, maintenance, and/or repair of the subject fire suppression system." (Doc. 20 at 4, ¶ 22.) Subrogor made claims under the Policy for water damage, and Plaintiff became subrogated to Subrogor's rights in exchange for Plaintiff's payment to Subrogor pursuant to the Policy.

Plaintiff alleges PC Construction owed Subrogor a duty of care to "monitor, inspect and see that its agents, servants, workmen, employees, and/or chosen subcontractors properly constructed the buildings and fire suppression system at the [S]ubject [P]roperty." *Id.* at 9, ¶ 43. It asserts that PC Construction's breach of this duty of care directly and proximately caused the water damage at the Subject Property and that PC Construction failed to: (1) exercise reasonable care when constructing the buildings and "fire suppression system" at the Subject Property, *id.* at 10, ¶ 44; (2) adequately instruct, supervise, or train subcontractors, employees, and agents when constructing the buildings; (3) adequately warn Subrogor of dangers resulting from its alleged failure to exercise reasonable care in construction; (4) establish adequate controls to ensure proper performance of tasks regarding construction of the buildings; (5) perform tasks in conformity with prevailing industry and governmental standards; and (6) retain competent, qualified, or capable agents to perform the construction. Plaintiff also contends PC Construction violated applicable standards of care set by statutes, rules, regulations, ordinances, codes, and industry practices and customs.

Plaintiff alleges PC Construction impliedly warranted that it would perform its work at the Subject Property "in a reasonably thorough workman-like manner, and/or with quality workmanship[,]" *id.* at 11, ¶ 47, and that PC Construction's conduct breached that warranty, resulting in the water damage and related expenses. Subrogor allegedly "performed all conditions precedent to recover" for these breaches, and Plaintiff now seeks to enforce Subrogor's right of recovery in connection with these claims. *Id.* at ¶ 50.

## II.   Whether the Court Should Consider the Documents Attached to PC Construction's Motion to Dismiss.

In reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R.

3

Civ. P. 12(b)(6), the court may consider facts subject to judicial notice, facts alleged in the complaint, "any written instrument attached to [the complaint] as an exhibit[,]" "document[s] incorporated in [the complaint] by reference[,]" and any documents considered "integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks and citations omitted). It must also "be clear on the record that no dispute exists regarding the authenticity or accuracy of the document[]" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

A document is "'integral'" to the complaint if the complaint "'relies heavily upon [the document's] terms and effect[.]'" *Nicosia*, 834 F.3d at 230 (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "This generally occurs" when the incorporated material is a "legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim— was not attached to the complaint." *Id.* at 231 (internal quotation marks and citation omitted). "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

PC Construction submits three documents with its motion to dismiss: (1) a purported settlement agreement between Founders Lodge Condominium Association and Founders Lodge Development Corp. dated December 1, 2021 that purportedly releases certain property damage claims (the "Settlement Agreement"), (2) a purported construction contract between Founders Lodge Development Company, LLC, and Pizzagalli Construction Company dated April 21, 2005 (the "Construction Contract"), and (3) a declaration by a Senior Vice President of PC Construction filed in a New Hampshire state court dated April 3, 2023 (the "Declaration"). PC Construction urges the court to consider these documents for purposes of its motion to dismiss, arguing that they are integral to the Amended Complaint.

4

## A.     Whether the Court Should Consider the Settlement Agreement.

The Settlement Agreement was not attached to or referenced in the Amended Complaint. PC Construction is not a party to the Settlement Agreement, and whether PC Construction was a "contractor" of any party to the Settlement Agreement is an issue of fact which the court cannot resolve in ruling on a motion to dismiss. *See Martinez v. 189 Chrystie St. Partners, LP*, 2023 WL 5390442, at *3 (S.D.N.Y. Aug. 22, 2023) (declining to consider settlement agreement for purposes of motion to dismiss because "there [was] an issue of fact whether the document that [the d]efendants h[e]ld out as reflecting the parties' preliminary settlement agreement is an accurate reflection of the terms of that agreement[]").[1]

Although the existence of a settlement agreement that purportedly releases Plaintiff's claims against PC Construction is an affirmative defense that may be dispositive in this case, *see* Fed. R. Civ. P. 8(c)(1) (listing "release" as affirmative defense); *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) ("Settlement and release is an affirmative defense[.]"), the Settlement Agreement is not integral to the Amended Complaint because Plaintiff's negligence and breach of warranty claims do not "rel[y] heavily upon its terms and effect[]" which is a "necessary prerequisite for taking into account materials extraneous to the complaint[.]" *Nicosia*, 834 F.3d at 230-31 (internal quotation marks and citation omitted).[2]

---

[1] PC Construction cites the Construction Contract as evidence that it is a "contractor" under the Settlement Agreement. The Construction Contract, however, states "Pizzagalli Construction Company" is the contractor, and "Founders Lodge Development Company, LLC" is the owner. (Doc. 18-2 at 1.) Although PC Construction asserts Pizzagalli Construction Company is its former name, it does not explain how the court could consider this information when ruling on its motion to dismiss where it neither requests nor provides information to support judicial notice. *See* Fed. R. Evid. 201(c)(2) (stating court "must take judicial notice if a party requests it and the court is supplied with the necessary information[]").

[2] In ruling on a motion to dismiss, some district courts in the Second Circuit have considered settlement agreements that are extrinsic to the complaint. *See*, *e.g.*, *In re Refco Inc. Sec. Litig.*, 2012 WL 4053939, at *2 (S.D.N.Y. Aug. 8, 2012), *report & recommendation adopted sub nom.*, *In re Refco Sec. Litig.*, 2012 WL 4009175 (S.D.N.Y. Sept. 12, 2012) (collecting cases where courts "granted motions to dismiss third-party complaints because the third-party defendant had settled with the principal plaintiff[]"); *Martinez v. 189 Chrystie St. Partners, LP*, 2023 WL

### B.     Whether the Court Should Consider the Construction Contract.

PC Construction argues that the Construction Contract is integral to the Amended Complaint because Plaintiff's claims arise out of the contractual relationship between PC Construction and Founders Lodge Development Company, LLC. *See Long Trail House Condo. Ass'n v. Engelberth Const., Inc.*, 2012 VT 80, ¶ 31, 192 Vt. 322, 336, 59 A.3d 752, 761 (stating that, under Vermont law, "the existence of contractual privity" is required for claim that defendant breached implied warranty of good workmanship and habitability). The Amended Complaint does not, however, "rel[y]" on the "*terms* and effect" of the Construction Contract for either Plaintiff's negligence or breach of an implied warranty claim. *Nicosia*, 834 F.3d at 230 (emphasis supplied) (internal quotation marks and citation omitted). Plaintiff also disputes the relevance of the Construction Contract, arguing that PC Construction is not a named party and neither is Plaintiff or Plaintiff's Subrogor. *See Faulkner*, 463 F.3d at 134 (stating document cannot be considered on motion to dismiss if dispute exists regarding its authenticity, accuracy, or relevance); *DiFolco*, 622 F.3d at 111 ("It must . . . be clear that there exist no material disputed issues of fact regarding the relevance of the document.") (internal quotation marks and citation omitted).

For the foregoing reasons, the court does not consider the Construction Contract for purposes of PC Construction's motion to dismiss. *Cf. United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107-08 (2d Cir. 2021) (explaining that integral document exception applied "where the documents consisted of emails that were part of a negotiation exchange that the *plaintiff* identified as the basis for its good faith and fair dealing claim[]") (emphasis supplied).

### C.     Whether the Court Should Consider the Declaration.

PC Construction seeks to use the Declaration to establish that its construction at

---

5390442, at *3 (S.D.N.Y. Aug. 22, 2023) (noting some courts have considered settlement agreements that were not incorporated into complaint or subject to judicial notice if settlement agreement would completely "dispose" of action). In this case, however, the Settlement Agreement contains no specific mention of PC Construction.

the Subject Property was completed in 2006. The Declaration authored by PC
Construction's general counsel cannot be considered because it asserts facts not alleged
in the Amended Complaint, because it is disputed, and because it is offered for its truth.
*See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)
(stating district court erred in considering transcript of testimony in criminal proceedings
when ruling on 12(b)(6) motion). PC Construction's argument that the Declaration may
be considered because allegedly important facts were omitted from the Amended
Complaint does not alter that conclusion. *See AECOM*, 19 F.4th at 108 ("If all that is
required to render a document integral to the complaint is that it be favorable to the
defendant, possibly thwarting the plaintiff's claims, it would be difficult to imagine a
document that could not be considered on a motion to dismiss pursuant to the integral-to-
the-complaint exception.").

Although "[a court] may properly take judicial notice of [a] document" when the
document is "publicly available and its accuracy cannot reasonably be questioned[,]" the
contents of the Declaration are not subject to judicial notice. *Apotex Inc. v. Acorda
Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016);[3] *see also* Fed. R. Evid. 201(b) ("The
court may judicially notice a fact that is not subject to reasonable dispute because it . . .
can be accurately and readily determined from sources whose accuracy cannot reasonably
be questioned."). The court thus could take judicial notice of the fact that the Declaration
was filed in a state court but the statements contained there are not subject to judicial
notice. *Compare Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 ("A court may take
judicial notice of a document filed in another court not for the truth of the matters
asserted in the other litigation, but rather to establish the fact of such litigation and related
filings.") (internal quotation marks and citation omitted), *with Beauvoir v. Israel*, 794
F.3d 244, 248 n.4 (2d Cir. 2015) (stating court may not take judicial notice of statements

---

[3] As "matters judicially noticed by the [d]istrict [c]ourt are not considered matters outside the
pleadings[,]" the taking of judicial notice does not require the court to convert a motion to
dismiss into one for summary judgment. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406,
426 (2d Cir. 2008).

in court document "for the truth of the matters asserted[]") (internal quotation marks and citation omitted).

### D.      Whether the Court Should Convert the Pending Motion to Summary Judgment.

Under Fed. R. Civ. P. 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

The "conversion requirement" in Rule 12(d) is "strictly enforced whenever a district court considers extra-pleading material in ruling on a motion to dismiss." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (internal quotation marks and citation omitted).

Conversion to summary judgment would be inappropriate in this case because the parties have not had an adequate opportunity to conduct discovery. *See Sanders v. Sheppard*, 2019 WL 13405420, at *1 (E.D.N.Y. Sept. 30, 2019) ("[C]ourts routinely decline to convert motions to dismiss into motions for summary judgment when discovery has either been stayed or is ongoing."); *see also Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery.").

Because the court cannot consider the Settlement Agreement, the Construction Contract, or the Declaration for purposes of this Rule 12(b)(6) motion to dismiss, PC Construction's motion to dismiss based on those documents and its argument that Plaintiff has released its claims must be DENIED.

### III.   Conclusions of Law and Analysis.

#### A.      Standard of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege sufficient

facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*,

550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a

"two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010)

(internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court

discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also

"'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.*

(citation omitted). Second, the court considers whether the factual allegations, taken as

true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-

bound and context-specific, requiring the court "to draw on its judicial experience and

common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood"

that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195,

201 (2d Cir. 2017).

### B.     Whether the Economic Loss Rule Bars Plaintiff's Negligence Claim Against PC Construction.

PC Construction argues Plaintiff's negligence claim must be dismissed because

Plaintiff seeks purely economic losses. "The economic loss rule prohibits recovery in tort

for purely economic losses." *Long Trail House Condo. Ass'n*, 2012 VT 80, ¶ 10, 192 Vt.

at 327, 59 A.3d at 755 (internal quotation marks omitted). As the Vermont Supreme

Court has explained:

> In tort law, duties are imposed by law to protect the public from harm,
> whereas in contract the parties self-impose duties and protect themselves
> through bargaining. Thus, negligence actions are limited to those involving
> unanticipated physical injury, and claimants cannot seek, through tort law,
> to alleviate losses incurred pursuant to a contract.

*Id.* at ¶ 10, 192 Vt. at 327, 59 A.3d at 756; *see also Walsh v. Cluba*, 2015 VT 2, ¶ 27, 198

Vt. 453, 466, 117 A.3d 798, 808 ("Tort law imposes duties to protect the public from

harm, and thus negligence actions are generally limited to unanticipated physical injury, while contract law allows parties to protect themselves through bargaining."). Two primary concerns underly the economic loss rule: (1) "economic losses proliferate more easily than losses of other kinds, leading to indeterminate and disproportionate liability," and (2) "risks of economic loss tend to be especially well suited to allocation by contract." *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 32, 212 Vt. 612, 628, 238 A.3d 608, 622 (alterations adopted) (internal quotation marks and citations omitted).

Pursuant to Vermont's economic loss rule, "negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm." *Springfield Hydroelectric Co. v. Copp*, 779 A.2d 67, 70 (Vt. 2001) (alteration and internal quotation marks omitted). As a result, "[t]he determining factor in deciding whether to apply the economic-loss rule is not whether privity exists but rather whether there is a duty separate and apart from a contractual duty." *Walsh*, 2015 VT 2 at ¶ 27, 198 Vt. at 466, 117 A.3d at 808 (internal quotation marks omitted).

Plaintiff seeks purely economic losses for the costs of the repairs for the water damage at the Subject Property and related expenses. *See Long Trail House Condo. Ass'n*, 2012 VT 80, ¶ 10, 192 Vt. at 327, 59 A.3d at 756 (concluding damages "consist[ing] almost entirely of the costs of repair that stemmed from the alleged faulty construction[,]" including "replacement of certain components" and "water damage to interior walls and painted surfaces[,]" were purely economic); *Heath v. Palmer*, 2006 VT 125, ¶ 15, 181 Vt. 545, 550, 915 A.2d 1290, 1296 (stating "plaintiffs' remedy for the purely economic losses resulting from the reduced value or costs of repairs of the construction defects sounded in contract rather than tort[]"). The economic loss rule applies even if a claim is not based on a contract. *See Springfield Hydroelectric*, 779 A.2d at 71-72 (applying the economic loss rule, in absence of contractual privity, because "[t]he underlying analysis turns on whether there is a duty of care independent of any contractual obligations.") (emphasis and internal quotation marks omitted). Plaintiff does not allege any exception to the economic loss rule that would permit its negligence claim

10

to proceed against PC Construction.[4]

For the reasons stated above, the court thus GRANTS PC Construction's motion to dismiss Plaintiff's negligence claim (Count V).

## C.   Whether the Statute of Limitations Bars Plaintiff's Breach of Warranty Claim.

Because the Subject Property is a condominium and its construction was allegedly completed in 2006 according to the Declaration, PC Construction asserts Plaintiff's breach of warranty claim is barred by the six-year statute of repose in 27A V.S.A. § 4-116.[5] In the absence of the Declaration, which is not before the court, dismissal on statute of limitations grounds is governed by the four corners of the Amended Complaint. *See Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 131-32 (2d Cir. 2021) ("Although the statute of limitations is ordinarily an affirmative defense that must be

---

[4] The Vermont Supreme Court recognizes "a host of exceptions" to the economic loss rule which arise when the rationales underlying the rule "are weak or absent." *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶¶ 31-32, 212 Vt. 612, 627-28, 238 A.3d 608, 621-22. One such exception is "in professional services cases because the parties have a special relationship[.]" *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 31, 181 Vt. 513, 524, 928 A.2d 497, 507. The Amended Complaint does not allege a special relationship existed or that PC Construction performed professional design or architectural work. *See EBWS, LLC*, 2007 VT 37, ¶ 32, 181 Vt. at 526, 928 A.2d at 508 (concluding no special relationship existed where defendant "presented itself as a construction contractor not as a provider of a specialized professional service[]" and plaintiff "paid for the services of a contractor not a professional architect[]"). It is Plaintiff's burden to plead and prove facts that demonstrate a special relationship existed as a matter of law. *See Wentworth v. Crawford & Co.*, 807 A.2d 351, 357 (Vt. 2002) (affirming dismissal of negligence claim pursuant to economic loss rule because plaintiff failed to allege defendant "held itself out as a provider of a licensed professional service requiring a professional rather than ordinary standard of care[]").

[5] PC Construction describes 27A V.S.A. § 4-116 as a statute of repose, however, that section is titled "[s]tatute of limitations for warranties[.]" Although "[s]tatutes of repose and limitations both seek to bar belated claims[,]" a statute of limitations "bars a plaintiff's claim based on when the plaintiff's injury was discovered," while a statute of repose "bars a claim based on an external event or action, which may arise before the injury had resulted." *Carpin v. Vt. Yankee Nuclear Power Corp.*, 2024 VT 27, ¶ 14. In certain circumstances, the distinction can be significant. *See, e.g., CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) ("Statutes of limitations, but not statues of repose, are subject to equitable tolling[.]"). Notwithstanding that "statutes of limitations and statutes of repose are distinct in theory," courts and legislatures often use "the term 'statute of limitations' to refer to statues of repose[.]" *Fed. Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 142-43 (2d Cir. 2013).

11

raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

Under the Vermont Common Interest Ownership Act (the "VCIOA"), dealers and declarants of condominium units impliedly warrant the quality of units and common elements. *See generally* 27A V.S.A. § 4-114.[6] 27A V.S.A. § 4-114(b) states:

> A declarant and any dealer impliedly warrant that a unit and the common elements in the common interest community are suitable for the ordinary uses of real estate of its type and that any improvements made or contracted for by him or her, or made by any person before the creation of the common interest community, will be: (1) free from defective materials; and (2) constructed in accordance with applicable law, according to sound engineering and construction standards, and in a workerlike manner.

27A V.S.A. § 4-116(a) provides that a cause of action for breach of an implied warranty of quality under 27A V.S.A. § 4-114 must be brought "within six years after the cause of action accrues."

"[R]egardless of the purchaser's lack of knowledge of the breach," a cause of action accrues for a unit "at the time the purchaser to whom the warranty is first made enters into possession if a possessory interest was conveyed or at the time of acceptance of the instrument of conveyance if a nonpossessory interest was conveyed[,]" and for a common element, generally, "at the time the common element is completed[.]" 27A V.S.A. § 4-116(b).

Plaintiff argues that 27A V.S.A. § 4-116 does not apply to its claim because Subrogor is a condominium association rather than an individual purchaser of a condominium unit. Assuming *arguendo* that 27A V.S.A. § 4-116 applies to Plaintiff's

---

[6] The parties do not address whether the VCIOA's implied warranty of quality is coextensive with or otherwise subsumes the common law implied warranty of good workmanship with respect to condominiums. *See Long Trail House Condo. Ass'n v. Engelberth Const., Inc.*, 2012 VT 80, ¶ 31, 192 Vt. 322, 336, 59 A.3d 752, 761 (recognizing "implied warranty of habitability and good workmanship"); *Watson v. Vill. at Northshore I Ass'n, Inc.*, 2018 VT 8, ¶ 20, 207 Vt. 154, 169, 184 A.3d 1133, 1145 ("Where a statute does not address a legal issue and where the statute is not clearly inconsistent with the common law and does not attempt to cover the entire subject matter, the common law controls.") (alterations adopted) (internal quotation marks and citation omitted).

breach of warranty claim, it is not clear that the statute of limitations bars that claim because the Amended Complaint only states that PC Construction completed its work on the Subject Property prior to November 30, 2021. The Amended Complaint does not allege "the time the purchaser to whom the warranty [was] first made enter[ed] into possession" or "the time the [allegedly defective] common element [was] completed." 27A V.S.A. § 4-116(b).

Dismissal is only appropriate "if the complaint clearly shows the claim is out of time[]" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (alteration adopted) (internal quotation marks and citation omitted); *see also Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 142 (2d Cir. 2022) (rejecting defendant's theory of case for purposes of motion to dismiss because it was "unsupported by the allegations of the complaint[]" and relied on facts asserted in affidavits submitted with motion to dismiss). PC Construction's motion to dismiss Plaintiff's breach of warranty claim (Count VI) based on the statute of limitations is therefore DENIED.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART PC Construction's motion to dismiss. (Doc. 18.) Plaintiff's negligence claim against PC Construction (Count V) is DISMISSED. The motion is DENIED as to Plaintiff's breach of warranty claim against PC Construction (Count VI).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 16th day of August, 2024.

Christina Reiss, Chief Judge
United States District Court